**LEWIS BRISBOIS BISGAARD & SMITH LLP**
WILLIAM C. SUNG, SB# 280792
  E-Mail: William.Sung@lewisbrisbois.com
BRYAN P. MERCKE, SB# 325388
  E-Mail: Bryan.Mercke@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants,
INTERSTATE CLEANING CORPORATION
and JUAN NAVARRO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIATNA GONZALEZ, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>INTERSTATE CLEANING CORPORATION, a Missouri corporation; JUAN NAVARRO, an individual; and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.<br>Superior Court Case No. RG19036072<br><br>**DEFENDANTS INTERSTATE CLEANING CORPORATION AND JUAN NAVARRO'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>Action Filed:　9/19/2019<br>FSC Date:　　None<br>Trial Date:　　None Set |

**PLEASE TAKE NOTICE** that Defendants Interstate Cleaning Corporation ("Interstate Cleaning") and Juan Navarro ("Navarro") (collectively, "Defendants"), hereby removes the above-captioned action from the Superior Court of the State of California, for the County of Alameda, to the United States District Court for the Northern District of California under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of this Notice of Removal, Defendants state as follows:

　　　1.　　Removal is proper in this case because this Notice of Removal demonstrates that all requirements for removal under 28 U.S.C. 1332(d), the Class Action Fairness Act ("CAFA") are met.

　　　2.　　On September 19, 2019, Plaintiff Ariatna Gonzalez ("Gonzalez" or "Plaintiff") commenced this putative class action against Interstate Commerce and Navarro by filing a Class

4845-9676-3563.1

1. Action Complaint ("Complaint") in the Superior Court of the State of California, for the County of Alameda, bearing the case number RG19036072. The Complaint alleges eight causes of action: (1) Failure to Pay Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods or Compensation in Lieu Thereof; (4) Failure to Provide Rest Periods or Compensation in Lieu Thereof; (5) Wage Statement Violations; (6) Waiting Time Penalties; (7) Violation of Labor Code § 2802; and (8) Violation of Business and Professions Code § 17200, *et seq*.

3. Plaintiff served the Complaint on Interstate Cleaning on October 7, 2019. (Declaration of Blaine Brandon ("Brandon Decl."), ¶ 8.) Accordingly, this Notice of Removal is timely filed within thirty days of service of process. (28 U.S.C. § 1446.)

4. The Superior Court of the State of California, County of Alameda, is located within the Northern District of California. Thus, venue is proper under 28 U.S.C. § 84(a) because this is the "district and division embracing the place where such action is pending." (28 U.S.C. § 1441(a).)

5. No previous application has been made for the relief requested herein.

6. Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed, served, or received by Defendants in this action are attached hereto as **Exhibit 1**. A true and correct copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, County of Alameda, in accordance with 28 U.S.C. § 1446(d).

## I. REMOVAL IS PROPER DUE TO THE JURISDICTION CONFERRED UNDER THE CLASS ACTION FAIRNESS ACT

7. This case is subject to removal under the CAFA of 2005. Pub. L. No. 109-2, 119 Stat. 4 (28 U.S.C. §§ 1332(d) and 1453).

8. Under CAFA jurisdiction, unlike other diversity jurisdiction cases, "no antiremoval presumption attends cases invoking CAFA." (*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).)

/ / /

9. Plaintiff purports to bring this suit on behalf of non-exempt current and former employees employed by Defendants within the State of California. (Complaint, at ¶ 1.) This class case, brought under California Code of Civil Procedure section 382, is a statute similar to a class action as defined in rule 23 of the Federal Rules of Civil Procedure. (28 U.S.C. § 1332(d)(1)(B).

10. This is a putative class action in which: (1) there are 100 or more members in Plaintiff's proposed class; (2) at least some of the members of the proposed class have different citizenship from Interstate Cleaning and Juan Navarro; and (3) the aggregate amount in controversy exceeds $5,000,000.00. Thus, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) and 1453(b).

### A. Diversity of Citizenship Exists

11. At least one member of the proposed class is a citizen of a state different from Defendants Interstate Cleaning and Juan Navarro. (28 U.S.C. § 1332(d)(2)(A).)

12. For purposes of diversity, a natural person is a "citizen" of the state in which they are domiciled. (*Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).) A person's domicile is the place they reside with the intention to remain or to which they intend to return. (*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

13. Plaintiff, Ariatna Gonzalez, is a citizen of California. Plaintiff resides in California, and worked and earned wages in California for Interstate Cleaning from October of 2016 through September 20, 2019. (Complaint, at ¶ 11, 19.)

14. Likewise, the members of the proposed class are Interstate Cleaning's current and former employees within the State of California (Complaint, at ¶ 28.)

15. Defendant Interstate Cleaning, as a corporation, is a citizen of the state in which it has been incorporated and the state where its principal place of business is located. (28 U.S.C. § 1332(c)(1).) Interstate Cleaning is incorporated in the State of Missouri. (Brandon Decl., at ¶ 3.) The majority of Interstate Cleaning's high level executives, marketing, and legal functions take place in Saint Louis, Missouri, and its offices, including the President, chief executives, and General Counsel, direct, control, and coordinate its activities in Saint Louis, Missouri. (Brandon Decl., at ¶ 4.) Interstate Cleaning's principal place of business is located in Missouri. As such,

Interstate Cleaning is a citizen of Missouri.

16. Defendant Juan Navarro, as an individual, is a citizen of the State of Washington. Juan Navarro's primary residence is in Washington, and has been continuously since 2011. (Declaration of Juan Navarro ("Navarro Decl."), at ¶ 2.) Juan Navarro intends to remain in the State of Washington. (Navarro Decl., at ¶ 2.) As such, Juan Navarro is a citizen of the State of Washington.

17. The diversity requirements of CAFA require only that the citizen of any member of the class be diverse from any defendant. Here, because the named Plaintiff is a California Citizen, because Defendant Interstate Cleaning is a citizen of Missouri, and because Defendant Juan Navarro is a citizen of Washington, the "minimal diversity" requirement under CAFA is satisfied. (28 U.S.C. § 1332(d)(2)(A).)

### B. Defendants Satisfy the Amount in Controversy Requirement

18. Defendants dispute that this class could ever be certified, and Defendants dispute that it is liable for any of Plaintiff's claims asserted in the Complaint. Nevertheless, the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000.00 (28 U.S.C. § 1332(d)(2), (6).) Although Plaintiff does not plead a specific amount of damages, Defendants can demonstrate that the aggregate amount in controversy exceeds $5,000,000.00. (*See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").)

19. Plaintiff alleges that Defendants failed to pay Plaintiff and the putative class members for all hours worked, including overtime wages. Plaintiff additionally alleges that Defendants failed to provide Plaintiff and the putative class with complaint meal and rest periods, or premiums in lieu thereof. Plaintiff further alleges that Defendants are liable for waiting time penalties, and that Defendants are liable for failure to provide accurate wage statements.

20. Plaintiff seeks the following relief on behalf of themselves and the putative class:

    a. Compensatory damages for unpaid minimum and overtime wages;

    b. Damages for unpaid meal and rest period premiums;

    c. Penalties for inaccurate wage statements;

        d.      Waiting time penalties;

        e.      Restitution under Business and Professions Code section 17203;

        f.      And reasonable attorneys' fees.

21. Defendants' notice of removal "need not contain evidentiary submissions." (*Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at p. 84.) In showing the amount in controversy, Defendants "may rely on reasonable assumptions." (*Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019).) The amount in controversy is "simply an estimate of the total amount in dispute . . . [and] [i]n that sense, the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. (*Id.* at p. 927.) Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." (*Ibid.* (quotation marks omitted).)

22. It is permissible for Defendants, when the Complaint does not provide clear indications of the amount in controversy, to rely on putative class members' employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. (*See ibid.*) Defendants may rely on "a chain of reasoning that includes assumptions." (*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).) Defendants do not need to "provide evidence proving the assumptions correct." (*Arias*, 936 F.3d at p. 927.) Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (*Ibid.* (citation omitted).)

        **1.**      **Unpaid Overtime and Minimum Wages and Liquidated Damages**

23. California *Labor Code* section 510 generally provides that an employer must pay all overtime to non-exempt employees who work more than 8 hours in one workday or more than 40 hours in one workweek (whichever is greater). All overtime hours worked over eight hours, but less than 12 hours, in a workday and the first eight hours on the seventh consecutive workday must be paid to non-exempt employees at a rate of one and one-half their regular rate of pay. All overtime hours worked over 12 hours in a workday or over eight hours on the seventh consecutive workday must be paid to non-exempt employees at a rate of two times their regular rate of pay.

24. *Labor Code* section 1194 provides for the recovery of unpaid minimum wages in a civil suit. *Labor Code* section 1194.2 provides for the recovery of liquidated damages, which are equal to the amount of unpaid minimum wages.

25. "In determining the amount in controversy, courts first look to the complaint." (*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).) For the unpaid overtime wages claim, the Complaint alleges that throughout the statutory period, Defendants had a "policy of, at times, failing to compensate Plaintiff and other similarly situated employees in the State of California with overtime wages . . . as a result of, among other things, [1] failing to accurately track and/or pay for all hours worked; . . . [2] permitting employees to work off the clock; [3] failing to pay all overtime wages owed at the overtime rate of pay; and/or [4] rounding time entries. (Complaint, at ¶ 2; *see also* Complaint, at ¶¶ 20, 33(a)-(e), 41.) The proposed class period is defined as "four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class . . . ." (Complaint, at ¶ 28.)

26. For the unpaid minimum wages claim, Plaintiff's Complaint provides that "policy or practice of, at times, failing to compensate Plaintiff and other similarly situated employees in the State of California with minimum wages as a result of, among other things, [1] Defendants failing to accurately track and/or pay for all hours worked; [2] engaging, suffering, or permitting employees to work off the clock; [3] and/or rounding time entries . . . ." (Complaint, at ¶ 3; *see also* Complaint, at ¶¶ 21, 33(a)-(e), 46.)

27. The Complaint alleges four different theories of violations leading to unpaid overtime liability, and overlapping theories leading to unpaid minimum wages liability. Based upon Plaintiff's assertion that Defendants had a "policy of, at times" committing several violations, the amount in controversy analysis utilizes a reasonable assumption of 30 minutes of unpaid overtime and unpaid minimum wages per week per employee. (*See Arias*, 936 F.3d at p. 923 (defendant's assumption of a violation rate of 30 minutes of unpaid overtime per day was reasonable when plaintiff's complaint asserted "routine" violations).)

28. Based on Interstate Cleaning's employment data on non-exempt employees in California from September 19, 2015 through October 11, 2019 ("Employee Data"), there were

approximately 2,575 employees that worked a total of approximately 126,219 workweeks. (Declaration of William C. Sung ("Sung Decl."), at ¶ 4.)  For each employee employed in the class period, that employee's final hourly rate was multiplied by 0.5 to achieve the overtime premium rate. (Sung Decl., at ¶ 4.)  That overtime rate was multiplied by 0.5, representing the 30 minutes of unpaid overtime per week, and multiplied again by the number of workweeks the employee was employed during the statutory period. (Sung Decl., at ¶ 4.)  This data was then summed for each employee to reach the amount in controversy for the unpaid overtime wages as approximately $374,620.36.  (Sung Decl., at ¶ 4.)

29. For the unpaid minimum wages claim, the current minimum wage of $12 per hour is utilized in making the amount in controversy calculation. (*See Andrade v. Beacon Sales Acquisition, Inc.*, 2019 U.S. Dist. LEXIS 171460, No. CV-19-06963-CJC-RAOx, at *12 n.4 (C.D. Cal. Oct. 1, 2019) (accepting defendant's assumption of $12/hour as the minimum wage for calculating minimum wage damages as reasonable).)

30. By multiplying the minimum hourly rate of $12 by 0.5, representing one half hour of unpaid minimum wages per week, and multiplying that product again by the number of workweeks, 126,219, the amount in controversy is approximately $757,314.00.

31. Plaintiff seeks liquidated damages. (Complaint, at ¶ 48.)  Since the liquidated damages is equal to the amount of unpaid wages, the amount in controversy for the liquidated damages is approximately $757,314.00.

### 2. Failure to Provide Meal and Rest Periods

32. *Labor Code* section 512, subdivision (a) provides that employers must provide meal periods, generally, for employees who work more than five hours per day, and that the meal period must be an uninterrupted 30 minutes where the employee is free from all duties.  The California Wage Orders generally provide that employers shall offer a ten minute, uninterrupted rest period per four hours of work, or a major fraction thereof.  (*Brinker Restaurant Crop. v. Superior Court*, 53 Cal.4th 1004, 1028-29 (2012).  *Labor Code* section 226.7 provides that employers who fail to provide a meal or rest period are subject to a premium payment of one hour's wages to the employee.

33. Plaintiff asserts that the meal and rest period class consists of all of Defendants' non-exempt California employees employed at any time within the four years preceding the filing of the Complaint. (Complaint, at ¶ 28.)

34. For meal periods, the Complaint alleges that Defendants have "a policy or practice of compelling Plaintiff and other similarly situated employees in the State of California to work more than five (5) and ten (10) hours per workday without being afforded uninterrupted, timely, and complete 30-minute meal periods or compensation in lieu thereof . . . ." (Complaint, at ¶ 4.) Plaintiff also stated in the Complaint that "Defendants have had a policy of failing to provide Plaintiff and other similarly situated non-exempt employees . . ., at times, with a thirty (30) minute . . . meal period." (Complaint at ¶ 22.)

35. For rest periods, the Complaint alleges that Defendants have "a policy or practice of compelling Plaintiff and other similarly situated employees in the State of California to work more than four (4) hours per workday (or major fractions thereof) without being paid, uninterrupted, timely, and complete ten-minute rest periods in which employees are completely relieved of all duties, or compensation in lieu thereof . . . ." (Complaint, at ¶ 5.) Plaintiff also stated in the Complaint that Defendants had "a policy of failing to provide Plaintiff and similarly situated employees . . . at times, with paid, uninterrupted and complete rest periods . . . ." (Complaint, at ¶ 23.)

36. Based on these allegations, which is that Defendant had a "policy or practice" of providing non-compliant meal and rest periods, Defendants reasonably assume that approximately one meal and rest period violation per week. (*See Elizarraz v. United Rentals, Inc.*, 2019 U.S. Dist. LEXIS 62065, No. 2:18-CV-09533-ODW(JC), at *3-4 (C.D. Cal. Apr. 9, 2019) (finding violation rates of 50% for meal period claims reasonable in light of pattern and practice allegations). Defendants are making an even more conservative estimate by assuming a 20% violation rate.

37. From September 19, 2015 to October 11, 2019, Plaintiff employed approximately 2,575 employees who worked approximately 126,219 workweeks. (Sung Decl., at ¶ 6-7.)

38. Utilizing a violation rate of one meal and rest period per week, each employee's

final rate of pay—the premium payment—is multiplied by the number of workweeks that the employee worked within the statutory period. (Sung Decl., at ¶ 6-7.) Summing this data for each employee reveals the amount in controversy for the meal period claim is approximately $1,498,481.42, and the amount in controversy for the rest period claim is approximately $1,498,481.42. (Sung Decl., at ¶ 6-7.)

### 3. Waiting Time Penalties

39. *Labor Code* sections 201 and 202 require that employees be paid all wages owed to them upon their termination from employment. *Labor Code* section 203 provides for waiting time penalties if an employer willfully violates these provisions. The penalties are assessed at an amount equal to the employee's daily wages for each day the wages remain unpaid, up to thirty days' wages. (Cal. Lab. Code § 203.)

40. Plaintiff alleges that the waiting time penalties class consists of all of Defendants' non-exempt California employees employed within three years preceding the filing of the Complaint. (Complaint, at ¶ 28.)

41. Plaintiff's Complaint asserts that Defendants had "a policy or practice of failing to pay Plaintiff and other similarly situated employees in the State of California the full amount of their wages owed to them upon termination or resignation . . . ." (Complaint, at ¶ 7.)

42. The number of non-exempt employees terminated between September 19, 2016 and October 11, 2019 is approximately 1,903. (Sung Decl., at ¶ 8.)

43. Based upon Plaintiff's assertion that Defendants had a "policy or practice" of failing to pay all wages upon termination, Defendants assume a 100% violation rate for the waiting time penalties. (*See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411-HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint).)

44. Based on this violation rate, within the Employee Data, each employee's final hourly rate of pay was multiplied by eight hours to achieve their daily rate, then multiplied by 30 days. (Sung Decl., at ¶ 8.) Summing this data for each employee reveals the amount in

controversy for this claim to be approximately $4,305,710.40.  (Sung Decl., at ¶ 8.)

### 4. Wage Statement Violations

45. *Labor Code* section 226(a) requires that nine categories of information be included on each pay stub, including: (1) gross wages earned; (2) total hours worked by each employee; (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all deductions; (5) net wages earned; (6) the inclusive dates of the period for which the employee is being paid; (7) the employee's name and identification number or the last four digits of the employee's social security number; (8) the name and address of the legal entity that is the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each holy rate by the employee.  If there is a violation, the damages are governed by Labor Code section 226(e), which provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees."

46. Labor Code section 226(e) claims for statutory penalties have a one-year statute of limitations.  (See Code Civ. Proc. § 340(a).)  Thus, the applicable statute of limitations for this claim is from September 19, 2018 to present.

47. As Plaintiffs allege in the Complaint that "at all relevant times, Defendants maintained and continue to maintain a policy and practice of issuing wage statements that do not accurately set out amounts due to, among other things, intentionally failing to furnish employees with itemized wage statements that accurately reflect, among other things, gross wages earned; total hours worked; net wages earned; and all applicable hourly rates of pay in effect during the pay period and the corresponding number of hours worked at each hourly rate. (Complaint, at ¶ 75.)

48. Due to the language in the Complaint alleging that Defendants maintained a "policy and practice" of committing wage statement violations, Defendants assume a 100%

violation rate.

49. There are approximately 837 non-exempt employees employed from September 19, 2018 to present. (Sung Decl., at ¶ 9.) In that same time period, the total number of pay periods is approximately 12,188. The amount in controversy is calculated by multiplying the number of initial pay periods for each employee by the penalty rate, $50. (Sung Decl., at ¶ 9.) The remaining 11,351 pay periods are then multiplied by $100. (Sung Decl., at ¶ 9.) No individual employee's penalty exceeded $4,000 in this calculation. (Sung Decl., at ¶ 9.) This results in approximately $1,176,950.00 in penalties for the *Labor Code* section 226 wage statement claim. (Sung Decl., at ¶ 9.)

### 5. Attorneys' Fees

50. For CAFA cases, "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." (*Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Further, "a court must include future attorneys' fees recoverable by statute or contrarct when assessing whether the amount-in-controversy requirement is met." (*Ibid.*) "The Defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." (*Ibid.*)

51. All of the *Labor Code* provisions for which Plaintiff seeks damages include the provision of attorneys' fees.

52. In general, a 25% benchmark of the potential damages constitutes the potential attorneys' fees. (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) [holding that where attorneys' fees are permissibly used in calculating the amount in controversy, a benchmark of 25% of the common fund was appropriate].) Though this is not a per se rule, a 25% benchmark of attorneys' fees is generally reasonable. (*Arias v. Residence Inn*, 936 F.3d 920, 928 (9th Cir. 2019).

53. In the case at hand, even without including the attorneys' fees, the amount in controversy, which includes the unpaid overtime, unpaid minimum wages, liquidated damages, meal and rest period violations, waiting time penalties, and wage statement violations, is approximately $10,368,871.60. Applying a 25% benchmark to this sum results in attorneys' fees

of approximately $2,592,217.90. This results in a total amount in controversy of approximately $12,961,089.49.

### C. The Putative Class Size Consists of More than 100 Members

54.     The aggregate number of class members in Plaintiffs' proposed class of California non-exempt employees employed from September 19, 2019 to October 11, 2019, is approximately 2,575. This is greater than the requisite 100 members required under 28 U.S.C. § 1332(d)(5)(B).

## II.     THE REQUIREMENTS OF 28 U.S.C. § 1446 ARE MET

55.     A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other papers from which it may be ascertained that the case is removable. 28 U.S.C. § 1446(b). Defendant Interstate Cleaning was served with a copy of the Complaint on October 7, 2019. (Blaine, Decl. ¶ 8.) Therefore, Defendant Interstate Cleaning received a copy of the document from which it was ascertained that the case was removable, at the earliest on October 7, 2019. Accordingly, this Notice of Removal is timely filed.

## III.    SERVICE OF NOTICE ON PLAINTIFFS AND STATE COURT

56.     Defendants will promptly give Plaintiff written notice of filing of this Notice of Removal and will promptly file a copy of this Notice of Removal with the Clerk of the Alameda County Superior Court, where the action is currently pending, as required by 28 U.S.C. § 1446(d).

## IV.     NO OTHER DEFENDANTS HAVE JOINED THE ACTION

57.     Defendant Juan Navarro has not yet been served in this action, however counsel William Sung of Lewis Brisbois Bisgaard & Smith, LLP is authorized to accept service of the Complaint on Juan Navarro's behalf. (Navarro Decl. ¶ 6.) Defendant Juan Navarro consents to the removal of this action. (Navarro Decl. ¶ 4.) There are no other Defendants that have been named or served in this action, thus there are no other Defendants to join in this Notice of Removal.

/ / /
/ / /
/ / /
/ / /

WHEREFORE, Defendants Interstate Cleaning and Juan Navarro respectfully removes this action from the Alameda County Superior Court, bearing case number RG19036072, to this Court pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453.

DATED: November 6, 2019　　　　　　　**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: _____
William C. Sung
Bryan P. Mercke
Attorneys for Defendants, INTERSTATE CLEANING CORPORATION and JUAN NAVARRO