UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIATNA GONZALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERSTATE CLEANING CORPORATION, et al.,<br><br>    Defendants. | Case No. 19-cv-07307-KAW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATIOIN**<br><br>Re: Dkt. No. 9 |

Plaintiff Ariatna Gonzalez filed this putative class action against Defendants Interstate Cleaning Corporation ("ICC") and Juan Navarro, asserting violations of various California labor laws. (*See* Compl., Dkt No. 1-1 at 2.) Pending before the Court is Defendants' motion to compel arbitration. (Defs.' Mot. to Compel, Dkt. No. 9.) Having considered the parties' filings and the relevant legal authority, the Court GRANTS Defendants' motion.

## I.   BACKGROUND

Defendant ICC is a national janitorial maintenance services company. (Compl. ¶ 12; Brandon Decl. ¶ 5, Dkt. No. 9-1.) Plaintiff began her employment with Defendant ICC on October 25, 2016. (Brandon Decl. ¶ 7; Gonzalez Decl. ¶ 6.) Defendants assert that on that date, Plaintiff signed an agreement to arbitrate wage and hour disputes ("Arbitration Agreement"). (Brandon Decl. ¶ 12, Exh. 1.)

Plaintiff states that around October 2016, she went to the San Francisco Premium Outlet and inquired about a position with the janitorial services office. (Gonzalez Decl. ¶ 3, Dkt. No. 17-2.) Plaintiff met with Defendant Navarro and Jesus Ochoa, who provided Plaintiff with documents and information regarding open positions with Defendant ICC. (Gonzalez Decl. ¶ 4.) At the conclusion of what Plaintiff understood to be in an interview, Plaintiff was told to arrive for

1  work on October 25, 2016 for a 7:00 a.m. shift.  (Gonzalez Decl. ¶ 5.)

2        Plaintiff further states that on October 25, 2016, Plaintiff arrived about ten minutes before
3  her shift.  (Gonzalez Decl. ¶ 6.)  Mr. Ochoa then presented Plaintiff with a stack of at least ten
4  documents to sign, which required Plaintiff's signature before she could begin working.
5  (Gonzalez Decl. ¶ 7.)  Plaintiff states she was given less than ten minutes to review the documents,
6  which were in both English and Spanish.  (Gonzalez Decl. ¶ 8.)  "Because [her] shift was about to
7  begin, [she] did not have sufficient time to read, yet alone understand anything presented because
8  [she] cannot read or write in English and the Spanish documents used complex language [she] was
9  not familiar with."  (Gonzalez Decl. ¶ 8.)  Plaintiff asked Mr. Ochoa what the documents were for,
10 and Mr. Ochoa responded that they were required documents and part of her employment
11 application.  (Gonzalez Decl. ¶ 9.)  He then proceeded to indicate where Plaintiff should sign.
12 (Gonzalez Decl. ¶ 9.)  Thus, Plaintiff states that "she was not provided enough time to read the
13 documents and was rushed to sign them since [she] had so little time before [she] had to begin
14 [her] shift."  (Gonzalez Decl. ¶ 10.)

15       Defendants respond that although Plaintiff was hired on October 25, 2016, she did not
16 begin work that day.  Rather, her first shift was not scheduled until November 11, 2016.  (Supp.
17 Brandon Decl. ¶ 6, Dkt. No. 6.)  In support, Defendants provide Plaintiff's time detail record for
18 her first week of work, which shows work starting on November 11, 2016, and Plaintiff's first
19 wage statement, which is for the same gross pay as the time detail record.  (Brandon Decl. ¶¶ 7-8,
20 Exhs. B-C.)  Defendants further explain that the delay between Plaintiff filling out the new hire
21 paperwork on October 25, 2016 and her first shift on November 11, 2016 was due to the new hire
22 paperwork needing to be processed, as that paperwork included a I-9 Employment Eligibility
23 Verification form.  (Brandon Decl. ¶ 6, Exh. A.)

24       On September 19, 2019, Plaintiff filed the instant putative class action, asserting various
25 wage and hour violations.  (Compl. at 1.)  On January 16, 2020, Defendants filed the instant
26 motion to compel arbitration.  On March 12, 2020, Plaintiff filed her opposition.  (Pl.'s Opp'n,
27 Dkt. No. 17.)  On March 19, 2020, Defendants filed their reply.  (Defs.' Reply, Dkt. No. 19.)
28

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the Court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-281-JSW, 2005 WL 2894628, at *3 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## III. DISCUSSION

### A. Fraud in the Inception

Plaintiff argues that the Arbitration Agreement is void due to fraud in the inception of the contract. (Pl.'s Opp'n at 10-12.) Fraud in the inception occurs where "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all . . . ." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (internal quotation omitted). Thus, "mutual assent is lacking, and the contract is *void*." *Id.* (internal quotation and modification omitted).

Importantly, "fraud does not render a written contract *void* where the defrauded party had a reasonable opportunity to discover the real terms of the contract." *Rosenthal*, 14 Cal. 4th at 419-20. Thus:

> California law . . . requires that the plaintiff, in failing to acquaint himself or herself with the contents of a written agreement before signing it, not have acted in an objectively unreasonable manner. One party's misrepresentations as to the nature or character of the writing do not negate the other party's apparent manifestation of assent, if the second party had reasonable opportunity to know of the character or essential terms of the proposed contract. If a party, with such reasonable opportunity, fails to learn the nature of the document he or she signs, such "negligence" precludes a finding that the contract is void for fraud in the execution.

*Id.* at 423. The party who raises the defense "bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." *Id.* at 413.

3

Here, Plaintiff argues that she did not have a reasonable opportunity to know the character or essential terms of the Arbitration Agreement because she was only given ten minutes to review the documents before her shift started. (Pl.'s Opp'n at 12.) Defendants, however, have produced compelling evidence that Plaintiff did not, in fact, have a shift on the date she signed the Arbitration Agreement. Rather, the evidence in the record shows that while Plaintiff was hired on October 25, 2016, she did not have a shift until November 11, 2016. (*See* Supp. Brandon Decl. ¶¶ 6-8, Exhs. B-C.) As Defendants further point out, Plaintiff would not have been able to begin working, given that she filled out her I-9 on October 25, 2016, and that her I-9 needed to be processed. (Supp. Brandon Decl. ¶ 6; Defs.' Reply at 9.)[1]

In the alternative, Plaintiff argues that she lacked the literacy in English or Spanish to understand the Arbitration Agreement. (Pl.'s Opp'n at 12.) Plaintiff, however, provides no evidence that she did not actually understand the Arbitration Agreement itself. Rather, she states in her declaration that the "Spanish documents used complex language I was not familiar with." (Gonzalez Decl. ¶ 8.) She does not state that the Arbitration Agreement used such complex language, or that the language contained therein prevented her from understanding that she was agreeing to give up her right to bring a lawsuit on her wage and hour claims. Accordingly, the Court finds that Plaintiff has not satisfied her burden of showing that she could not understand the Arbitration Agreement.

Finally, Plaintiff suggests that Defendants may not have presented her with the Arbitration Agreement in the first place because the signature line is on a different page from the terms. (Pl.'s Opp'n at 12.) Again, Plaintiff produces no evidence in support of this argument, as she only states that upon review, she does not recognize the Arbitration Agreement and that her "signature looks slightly different than how [she] normally sign[s]." (Gonzalez Decl. ¶ 11.) This does not show by a preponderance of the evidence that she was not presented with the Arbitration Agreement.

Accordingly, the Court finds that Plaintiff has not satisfied her burden of showing that

---

[1] The Court also notes that contrary to Plaintiff's assertion that Mr. Ochoa simply indicated to her where to sign, the October 25, 2016 paperwork required more than just Plaintiff's signature, as she was also required to provide information such as how she wanted to be paid, her tax filing status, and the number of withholding allowances she wished to take.

4

there was fraud in the inception of the contract.

### B. Unconscionability

In the alternative, Plaintiff argues that the arbitration agreement is unenforceable because it is unconscionable. (Pl.'s Opp'n at 12.) Under California law, the party opposing arbitration bears the burden of proving that the arbitration provision is unenforceable. *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1149 (2013). The arbitration agreement must be both procedurally and substantively unconscionable at the time it was made to be unenforceable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). The arbitration agreement, however, need not be equally procedurally and substantively unconscionable; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

#### i. Procedural Unconscionability

"The procedural element of unconscionability focuses on oppression or surprise due to unequal bargaining power." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (internal quotation omitted). Here, Plaintiff contends that because the Arbitration Agreement was one of adhesion, it is oppressive and therefore procedurally unconscionable. (Pl.'s Opp'n 14.) Defendants do not dispute that the Arbitration Agreement was presented on a take it or leave it basis, but respond that being an adhesion contract does not "render [the Arbitration Agreement] procedurally unconscionable." (Defs.' Reply at 9.)

Defendants are incorrect. "California courts have held that oppression may be established by showing that contract was one of adhesion . . . ." *Poublon*, 846 F.3d at 1260. An adhesion contract, however, is not per se unconscionable. *Id.* at 1261. Rather, "if an employee must sign a non-negotiable employment contract as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Id.* (internal quotations omitted).

Plaintiff argues that other indications of oppression or surprise exist, pointing to Plaintiff only being given ten minutes to review the documents before her shift began. (Pl.'s Opp'n at 15.) As discussed above, however, the evidence in the record shows that Plaintiff did not have a shift

5

on the day she signed the Arbitration Agreement. Nonetheless, Plaintiff has established that there is procedural unconscionability because the contract is one of adhesion, and therefore the Court considers whether there is a high level of substantive unconscionability.

### ii. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). Terms are unconscionable if they are "overly harsh, unduly oppressive, so one-sided as to shock the conscience, or unfairly one-sided." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910-11 (2015) (internal quotations omitted). Thus, the court must look for terms that are "unreasonably favorable to the more powerful party." *Id.* at 911 (internal quotation omitted).

#### a. Limits on Discovery

First, Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it does not provide for adequate discovery. (Pl.'s Opp'n at 16.) The California Supreme Court has held that employees are "at least entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses." *Armendariz*, 24 Cal. 4th at 106. "Adequate discovery, however, does not mean unfettered discovery." *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 787 (9th Cir. 2002). Thus, parties are "permitted to agree to something *less* than the full panoply of discovery . . . ." *Armendariz*, 24 Cal. 4th at 105.

Notably, California courts have recognized that "[e]mployment disputes are factually complex, and their outcomes are often determined by testimony of multiple percipient witnesses, as well as written information about the disputed employment practice." *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 727 (2017) (internal quotation omitted). Thus, "[s]eemingly neutral limitations on discovery in employment disputes may be nonmutual in effect. This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses." *Id.* (internal quotation omitted).

Applying these principles, California courts have found discovery limitations

6

unconscionable where the plaintiff showed that such limitations were inadequate to allow the plaintiff to pursue her claim. In *Fitz v. NCR Corp.*, discovery was limited to deposition statements of two sworn individuals and any expert witnesses expected to testify, as well as an exchange of all exhibits and a list of potential witnesses. 118 Cal. App. 4th 702, 716 (2004). The arbitration agreement also allowed further discovery based on a "compelling need," which was defined as requiring the party to "demonstrate that a fair hearing would be *impossible* without additional discovery." *Id.* The Court of Appeal found that "the curtailment of discovery to only two depositions . . . does not provide [the plaintiff] with sufficient discovery to vindicate her rights," particularly when the plaintiff had estimated she would need to depose eight to ten witnesses. *Id.* Additionally, the plaintiff would be placed at a disadvantage because she would not have "the benefit of initial interrogatories when requesting additional information to vindicate her statutory claim." *Id.* at 717. While the Court of Appeal acknowledged that the arbitrator could allow further discovery if there was a "compelling need," this was "an inadequate safety valve" given the impossibility standard. *Id.* In short:

> the burden the [discovery limitation] imposes on the requesting party is so high and the amount of discovery the policy permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery.

*Id.* at 717-18.

Likewise, in *Baxter*, the California Court of Appeal found inadequate discovery limitations where the employee could receive her personnel and medical files, and each party could also submit up to ten interrogatories, propound five written requests for documents, and depose two individuals for a total of no more than eight hours. 16 Cal. App. 5th at 727. The arbitrator could also permit further discovery on a showing of "good and sufficient cause shown." *Id.* The Court of Appeal found that these limitations would not permit adequate discovery because the plaintiff had estimated she would need to depose six to ten witnesses. *Id.* at 729. Additionally, while the "good and sufficient cause" standard was "not as onerous as a 'compelling need' standard in *Fitz*, it still present[ed] a more stringent standard than a simple 'showing of need.'" *Id.* Moreover, the

7

"'good *and* sufficient cause' standard is vague." *Id.* Thus, "the default discovery allowed under the [arbitration agreement] is low, the burden placed on [the plaintiff] to justify additional discovery is somewhat greater than a simple showing of need or good cause, and [the plaintiff] has established as a factual matter that she will likely need to conduct at least three to five times the number of depositions allowed . . . ." *Id.* at 730.

The Court finds that the Arbitration Agreement's discovery limitations, here, are unconscionable. The Arbitration Agreement limits discovery to one interrogatory identifying potential witnesses, 25 requests for production, and two eight-hour days of witness depositions. (Arbitration Agreement ¶ 6(ii)(d)(1)-(3).) Additional discovery is permitted on "a showing of compelling need." (Arbitration Agreement ¶ 6(ii)(d).) Further, "[w]here the costs and burdens of the requested discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, and the importance of the discovery in resolving the issues, the arbitrator will deny such requests or order production on condition that the requesting party advance to the producing party the reasonable costs involved in making the production . . . ." (Arbitration Agreement ¶ 6(ii)(d)(4).)

Here, Plaintiff identifies three witnesses that she would likely need to depose, including Defendant Navarro, Mr. Ochoa, and a Person Most Knowledgeable regarding Defendant ICC's policies and practices. (Pl.'s Opp'n at 18.) Plaintiff also points out that the limitation on interrogatories prevents her from asking how Defendants tracked her time entries or when her exact dates of employment were, as she is only permitted a single interrogatory identifying potential witnesses. (*Id.*) Further, the Court observes that while Plaintiff may obtain additional discovery based on a showing of "compelling need" – a term that is vague and undefined by the Arbitration Agreement – the arbitrator may shift the costs of production onto Plaintiff based on factors including "the amount in controversy." Given that this is a minimum wage case, this increases the likelihood that Plaintiff would either have to pay to obtain discovery necessary to vindicate her statutory rights or go without the discovery altogether. Thus, as in *Fitz* and *Baxter*, Plaintiff is placed in the position where the default discovery would be inadequate, and she would have to meet a high burden (and potentially monetary costs) to obtain additional discovery.

Defendants' citations to the contrary are unpersuasive. In *Sanchez v. Carmax Auto Superstore California, LLC*, the arbitration agreement required the disclosure of relevant documents and the plaintiff's personnel file, twenty interrogatories, and three depositions, significantly more than the Arbitration Agreement here. 224 Cal. App. 4th 398, 404 (2014). The arbitration agreement also allowed additional discovery on a showing of "substantial need," a lower standard than the "compelling need" standard here. *Id.* at 405 ("[T]he standard for additional discovery was lower ('substantial' rather than 'compelling' need)."). In *Mercuro v. Superior Court*, the arbitration agreement limited discovery to three depositions and thirty discovery requests of any kind, again, more than the instant case. 96 Cal. App. 4th 167, 182 (2002). The arbitration agreement also permitted additional discovery on a showing of "good cause." *Id.* at 183. Further, the Court of Appeal observed that the plaintiff's concern about these limitations was "not totally unreasonable," but that the plaintiff had not shown how the provisions would actually prevent him from vindicating his statutory rights. *Id.* Here, in contrast, Plaintiff has given specific examples of how the discovery limits would constrain her ability to bring her case.

Accordingly, the Court concludes that the discovery limitations are substantively unconscionable.

### b. Lack of Mutuality

Next, Plaintiff argues that four terms in the Arbitration Agreement demonstrate a lack of mutuality. (Pl.'s Opp'n at 18-19.) Binding authority, however, establishes that none of these terms are substantively unconscionable.

#### 1. Unilateral Modification Term

First, Plaintiff challenges the Arbitration Agreement's unilateral modification term, which states: "I understand and agree that ICC may change or terminate this agreement after giving me 90 days written or electronic notice. Any change or termination will not apply to a pending claim." (Arbitration Agreement ¶ 8.)

As an initial matter, Plaintiff argues that per *Higgins v. Superior Court*, the Arbitration Agreement is not bilateral because only Plaintiff has agreed to arbitrate. (Pl.'s Opp'n at 19.) In

9

*Higgins*, the arbitration provision included "I agree" language, with "I" being a reference to the plaintiff only. 140 Cal. App. 4th 1238, 1253 (2006). The only time the arbitration provision referred to "the parties" was in articulating which claims the defendant could bring in court. *Id.* Here, however, the Arbitration Agreement clearly requires Plaintiff and Defendant ICC to go to arbitration, as the Arbitration Agreement states: "Interstate Cleaning Corporation ('ICC') and I agree to use binding arbitration, instead of going to court, for any 'Covered Claims' that arise or have arisen between me and ICC . . . ." (Arbitration Agreement ¶ 1.)

Plaintiff next argues that in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), the Ninth Circuit held that a unilateral modification term was substantively unconscionable. (Pl.'s Opp'n at 19-20.) Subsequently, however, California courts have made clear that unilateral modification terms are not substantively unconscionable because "the implied covenant of good faith and fair dealing limits the employer's authority to unilaterally modify the arbitration agreement and saves the agreement from being illusory and thus unconscionable." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 708 (2013); *see also Campos v. JPMorgan Chase Bank, NA*, Case No. 18-cv-6169-JSC, 2019 U.S. Dist. LEXIS 72862, at *26-27 (N.D. Cal. Feb. 21, 2019) ("*Ingle* was decided in 2003, long before the unanimous California line of cases expressly holding that the unilateral right to modify an arbitration agreement in the future is not substantively unconscionable because of the implied covenant of good faith and fair dealing."). In an unpublished decision, the Ninth Circuit quoted *Serpa* in concluding that "unilateral modification provisions . . . are not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'" *Ashbey v. Archstone Prop. Mgmt.*, 612 Fed. Appx. 430, 432 (9th Cir. 2015) (quoting *Serpa*, 215 Cal. App. 4th at 708).

Accordingly, the Court concludes that the unilateral modification term is not substantively unconscionable.

### 2. Waiver of PAGA Representative Action

Second, Plaintiff challenges the Arbitration Agreement's waiver of representative actions, specifically those brought under the Private Attorneys General Act ("PAGA"), as unconscionable.

10

(Pl.'s Opp'n at 20-21.)  The unenforceability of a PAGA waiver, however, is a matter of public policy, not unconscionability.  *See Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 384 (2014).  "Under California law, '[c]ontracts can be contrary to public policy but not unconscionable and vice versa.'"  *Poublon*, 846 F.3d at 1264 (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686-87 (2011), *vacated on other grounds by Sonic-Calabasas A, Inc. v. Moreno*, 565 U.S. 973 (2011)).  As there are no "California case[s] holding that a PAGA waiver is substantively unconscionable," the Ninth Circuit has found that "the unenforceability of the waiver of a PAGA representative action does not make this provision substantively unconscionable."  *Id.*

### 3. Ability to Consolidate Claims

Third, Plaintiff argues that the Arbitration Agreement is not mutual because it gives Defendants the unilateral right to consolidate claims in arbitration.  (Pl.'s Opp'n at 21.)  Plaintiff misstates the relevant provision.  Defendants do not have the right to consolidate claims; rather, the Arbitration Agreement states that "[f]or discovery purposes only, an *arbitrator* may consolidate claims filed by multiple individual employees . . . in a single arbitration proceeding, or may conduct a joint hearing for efficiency purposes . . . ."  (Arbitration Agreement ¶ 6(ii)(e)(3) (emphasis added).)  As Defendants do not, in fact, have the right to consolidate claims for arbitration purposes, the Court finds that this clause does not affect whether the Arbitration Agreement is mutual.

### 4. Confidentiality Clause

Fourth, Plaintiff contends that the confidentiality clause is unconscionable, relying on *Ting v. AT&T*.  (Pl.'s Opp'n at 22.)  There, the Ninth Circuit, relying on a D.C. Circuit case, found that "[a]lthough facially neutral, confidentiality provisions usually favor companies over individuals."  319 F.3d 1126, 1152 (9th Cir. 2003).  Thus, such secrecy terms were unconscionable.

Since *Ting*, California courts have found that confidentiality clauses are not substantively unconscionable.  *See Sanchez*, 224 Cal. App. 4th at 408 ("The second provision requiring confidentiality is not unconscionable. . . .") (internal quotation omitted).  Applying those cases, the Ninth Circuit in *Poublon*, likewise, found that confidentiality clauses were not substantively

1    unconscionable. 846 F.3d at 1266-67. The Ninth Circuit also acknowledged that its prior rulings
2    to the contrary, including *Ting*, "did not rely on any California law." *Id.* at 1267. As in *Poublon*,
3    this Court is bound by California appellate rulings, and finds that the confidentiality clause is not
4    substantively unconscionable. *See id.*

                c.    Written Decision Requirement

6    Finally, Plaintiff argues that the Arbitration Agreement is unconscionable because it does
7    not meet the requirements for a written decision. (Pl.'s Opp'n at 23.) California courts have
8    found that an arbitrator must issue a written decision that is sufficient to permit judicial review.
9    *See Armendariz*, 24 Cal. 4th at 107.

10   The Arbitration Agreement requires that the arbitrator "issue a decision in writing, setting
11   forth in summary form the reasons for the arbitrator's determination and the legal basis therefor."
12   (Arbitration Agreement ¶ 6(ii)(e)(3).) Focusing on the "summary form" language, Plaintiff
13   suggests this provision would allow the arbitrator to "simply decline to award or award damages
14   by simply citing a statute." (Pl.'s Opp'n at 23.) Plaintiff cites no authority in support of this
15   argument, and there is nothing in the Arbitration Agreement to suggest that a decision in
16   "summary form" would be satisfied by simply citing a statute. The Court finds that this term is
17   not substantively unconscionable.

        **iii.**    **Severance**

19   Even if substantively unconscionable terms are found in an agreement, they do not
20   automatically render the entire agreement unenforceable. *Serpa*, 215 Cal. App. 4th at 710. A
21   court has discretion to either sever an unconscionable provision from an agreement or refuse to
22   enforce the agreement in its entirety. *See Pokorny v. Quiztar, Inc.*, 601 F.3d 987, 1005 (9th Cir.
23   2010). If the arbitration agreement is "not otherwise permeated by unconscionability, the
24   offending provision, which is plainly collateral to the main purpose of the contract, [can be]
25   properly severed and the remainder of the contract enforced." *Serpa*, 215 Cal. App. 4th at 710.
26   Thus, an arbitration agreement is unenforceable only when "the only way to cure the
27   unconscionability is in effect to rewrite the agreement, since courts cannot cure contracts by
28   reformation or augmentation." *Ajamin v. CantoCO2e, L.P.*, 203 Cal. App. 4th 771, 803 (2012)

(internal quotation omitted).

Plaintiff argues that the Arbitration Agreement's unconscionability cannot be cured by severance because it "contains multiple unconscionable provisions . . . ." (Pl.'s Opp'n at 24.) As discussed above, Plaintiff has only identified one substantively unconscionable provision -- the discovery limitations in Paragraph 6(ii)(d). The Arbitration Agreement has a severability clause, allowing the Court to easily sever this term and enforce the remainder of the agreement without disrupting the agreement's chief objective of requiring the submission of wage and hour claims to arbitration. (*See* Arbitration Agreement ¶ 9.)

Because the unconscionable term can be severed, the Court finds that there is no substantive unconscionability. As Plaintiff must demonstrate both procedural and substantive unconscionability, the Court concludes that the Arbitration Agreement, without the discovery limitations, is enforceable.

### IV.     CONCLUSION

Because the procedural unconscionability is minimal, and the substantive unconscionability is eliminated through severance, Defendants' motion to compel arbitration is GRANTED. The Court shall stay the proceedings in the instant case pending resolution of the arbitration. 9 U.S.C. § 3.

IT IS SO ORDERED.

Dated: April 15, 2020

_____
KANDIS A. WESTMORE
United States Magistrate Judge